**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ROBERT J. BLEYLE,

                                        Plaintiff,

v.                                                                  3:20-cv-00509 (BKS/ML)

CHENANGO COUNTY and
THE CITY OF NORWICH, NEW YORK,

                                        Defendants.

_____

**APPEARANCES:**

*For Plaintiff:*
Douglas W. Drazen
2-8 Hawley Street, Suite 111
Binghamton, NY 13901

*For Defendants:*
Frank W. Miller
Giancarlo Facciponte
The Law Firm of Frank W. Miller
6675 Kirkville Road
East Syracuse, NY 13057

**Hon. Brenda K. Sannes, Chief United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Robert J. Bleyle brings this civil rights action pursuant to 42 U.S.C. § 1983

against Defendants Chenango County and the City of Norwich, New York ("Defendants").

(Dkt. No. 12).  Now before the Court is Defendants' motion for summary judgment.  (Dkt. No.

55).  Plaintiff opposes summary judgment and cross-moves to request additional discovery and

amend the Amended Complaint.  (Dkt. No. 63).  Defendants have replied in support of summary

judgment and in opposition to Plaintiff's cross-motion.  (Dkt. No. 68).

## II.     PROCEDURAL HISTORY

Plaintiff commenced this action on May 5, 2020, and in August of that year Defendants moved to dismiss for failure to state a claim.  (Dkt. Nos. 1, 9).  In response, Plaintiff filed an Amended Complaint on August 31, 2020.  (Dkt. No. 12).  Defendants again moved to dismiss, and Plaintiff responded by cross-moving to amend.  (Dkt. Nos. 14, 16).

On August 25, 2021, the Court (Mordue, J.) granted Defendants' motion to dismiss in part, explaining that:

> Based on Plaintiff's failure to oppose Defendants' arguments, the Court finds that he has abandoned the claims in the First Amended Complaint except false arrest, malicious prosecution, violation of due process, and municipal liability.  For these claims, the Court finds that the voluminous supporting exhibits and recordings submitted by Plaintiff are better addressed at summary judgment with the aid of a complete record.

(Dkt. No. 24).  The Court denied Plaintiff's cross-motion to amend, explaining that "Plaintiff did not comply with Local Rule 15.1 and the proposed amendments fail to cure the relevant deficiencies identified by Defendants."  (*Id.*).  The Court stated that it "will only grant Plaintiff leave to file a new amended pleading if it is focused strictly on the above claims and specifically alleges the personal involvement of any new defendants in their individual capacities."  (*Id.*).

Plaintiff did not further seek to amend the Amended Complaint, and the period for discovery closed on August 31, 2022.  (*See* Dkt. No. 54).  The pending motions followed.[1]

## III.    FACTUAL BACKGROUND[2]

### A.  Family History

---

[1] This case was reassigned to the undersigned on January 4, 2023.  (Dkt. No. 64).

[2] The facts are drawn from Defendants' Statement of Material Facts and Plaintiff's Response & Statement of Additional Material Facts, (Dkt. Nos. 55-1, 63-3), to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein.  The facts are construed in the light most favorable to Plaintiff as the non-moving party.  *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

Plaintiff was formerly in a relationship with Jennifer Lobdell, with whom he has a daughter.  (Dkt. No. 55-1, ¶ 79).  Plaintiff has not lived with his daughter since 2012 after his relationship with Lobdell ended.  (*Id.*, ¶ 80).  Mary Skillin is Lobdell's sister.  (*Id.*, ¶ 91).  Plaintiff and Mary Skillin had a "falling out" sometime in the summer of 2011 related to Mary Skillin's son Benson Skillin, who allegedly kicked Plaintiff in the genitalia.  (*Id.*, ¶¶ 92–94).

Plaintiff claims that, in May 2016, his daughter told him that Benson Skillin touched her vaginal area.  (*Id.*, ¶ 96).  Plaintiff and Lobdell brought their daughter to a doctor, but she denied making any allegation and showed no signs of sexual abuse.  (*Id.*, ¶¶ 98–99).  On May 25, 2016, Plaintiff's mother called the police because Mary Skillin came to her house and harassed her about Plaintiff's allegations about Benson Skillin.  (Dkt. No. 63-1, at 116).  In May of 2017, Plaintiff claims his stepmother was informed by his daughter that Benson Skillin abused her. (Dkt. No. 55-1, ¶ 104).

### B.  Calls to the Register

On September 12, 2017, Plaintiff called the New York Statewide Central Register of Child Abuse and Maltreatment (the "Register" or "SCR") and reported that Benson Skillin had sexually abused two of his cousins at gunpoint.  (Dkt. No. 55-1, ¶ 4).  On October 16, 2017, Plaintiff called the Register and reported that Benson Skillin had sexually abused his daughter. (*Id.*, ¶ 5).  Plaintiff also reported that Mary Skillin did drugs around and with children.  (*Id.*, ¶ 6).

### C.  Plaintiff's Arrest & Prosecution

In February of 2018, Plaintiff was arrested by the City of Norwich Police Department on two charges of falsely reporting an incident, in violation of New York Penal Law ("NYPL") § 240.5(4) based on his calls to the Register.  (Dkt. No. 55-1, ¶ 21).  As relevant here, § 240.5(4) states that a person is guilty of Falsely Reporting an Incident in the Third Degree when,

3

"knowing the information reported, conveyed or circulated to be false or baseless," he reports an "alleged occurrence of child abuse or maltreatment" to the Register "which did not in fact occur or exist." N.Y.P.L. § 240.5(4)(a).

In the first accusatory Information, dated February 21, 2018, Police Officer Matthew Roberts ("PO Roberts") alleged that on September 12, 2017, Plaintiff committed the offense of Falsely Reporting an Incident (Third Degree) in that: "[Plaintiff] did falsely report a sexual abuse, inadequate guardianship and drug abuse allegation . . . which was recorded by the SCR." (Dkt. No. 55-4, at 1). PO Roberts stated that these allegations were based on a recorded phone call to the SCR, a sworn statement by Mary Skillin, and an investigation conducted by the City of Norwich Police Department. (*Id.*). In the second accusatory Information, dated February 21, 2018, PO Roberts stated that on October 16, 2017, Plaintiff committed the same offense in that: [Plaintiff] did falsely report a sexual abuse allegation . . .  which was recorded by the SCR." (*Id.*, at 2). PO Roberts cited the same sources for these allegations. (*Id.*).

Mary Skillin's supporting statement affirmed that: 1) Plaintiff had previously made an unfounded complaint about her in 2015; 2) the September 12, 2017 complaint had been investigated by Child Protective Services ("CPS") and determined to be unfounded; 3) the October 16, 2017 complaint had also been investigated by CPS and determined to be unfounded; 4) Benson Skillin had not seen his cousins since 2008; and 5) Plaintiff continued to harass her. (*Id.*, at 3).

In April of 2018, Plaintiff filed a motion to dismiss the charges wherein he argued, among things, that he had a reasonable basis to make the calls to the Register. (Dkt. No. 63-1, at 1–37). Plaintiff submitted statements from several individuals who supported his allegations, including the mother of the cousins allegedly abused by Benson Skillin. (*Id.*, at 46–61). These

individuals stated that Benson Skillin had abused two cousins around 2009 at the home of retired Judge Howard Sullivan (Mary Skillin's father).  (*Id.*).  PO Roberts testified at his deposition that he did not recall seeing these individuals' statements during his investigation of the case.  (Dkt. No. 55-7, at 61, 73).  The Norwich City Court agreed that the charges were defective but granted the People leave to amend. (Dkt. No. 63-1, at 159).

In May of 2018, the two charges against Plaintiff were amended and another charge was brought for Falsely Reporting an Incident (Third Degree).  In the related accusatory Informations, dated May 7, 2018, PO Roberts added details about Plaintiff's reports concerning Mary and Benson Skillin.  (Dkt. No. 55-4, at 15–18).  PO Roberts cited a new statement from Mary Skillin, which expanded on her previous one and added that: 1) she does not use drugs or permit Benson to use drugs; 2) Benson did not have access to a gun; 3) Plaintiff's complaint about Benson abusing his cousins was false since Plaintiff "has no knowledge or proof of these things happening"; and 4) Plaintiff's complaint about Benson abusing Plaintiff's daughter was false because Benson had never been alone with her for any reason.  (*Id.*, at 23).

On June 7, 2018, Plaintiff amended his motion to dismiss, again asserting that he had a reasonable basis to report his allegations to the Register about Benson and Mary Skillin.  (Dkt. No. 63-1, at 63–92).  In July of 2018, all of the charges were dismissed in Norwich City Court; Judge Michael J. Genute found, inter alia, that the People failed to establish reasonable cause to believe that Plaintiff knew that the information he reported was false or baseless.  (*Id.*, at 159–68).  Judge Genute observed that Mary Skillin's supporting statement did not contain "any non-hearsay assertion that states that the defendant knew the information he reported was false or baseless," and further, "[t]he fact that a report has been unfounded does not allow for the inference that the maker of the report knew it was false or baseless."  (*Id.*, at 162).

On September 1, 2018, Plaintiff was arrested again on charges of Falsely Reporting an Incident (Third Degree) based on the same calls to the Register, this time with additional supporting information.  (Dkt. No. 55-1, ¶ 1).  In the accusatory Informations, dated August 31, 2018, PO Roberts alleged that on September 12, October 16, and October 17, 2017, Plaintiff reported information to the Register that he knew was false or baseless.  (Dkt. No. 55-4, at 31, 35, 38, 41).  PO Roberts cited the calls to the Register, Mary Skillin's May 2018 statement and new statements dated August 31, 2018 from Benson Skillin and Zina Corey of the Chenango County Department of Social Services.  (*Id.*).

Benson Skillin's statement affirmed that: 1) he had not sexually abused any children; 2) Plaintiff had been "making his life miserable for as long as [he could] remember"; 3) Plaintiff had made false complaints against his family before; and 4) Plaintiff's drug-related allegations were false.  (*Id.*, at 34).  Zina Corey's statement affirmed that she had discussed with Plaintiff the sexual abuse allegations that were made about his daughter, that his daughter was interviewed and "no disclosures were made," and that "at this point in the investigation there is no evidence that his daughter was sexually abused."  (*Id.*, at 32).

On September 4, 2018, Chenango County Assistant District Attorney ("ADA") Laura Parker indicated that the prosecution was ready for trial.  (Dkt. No. 55-5, at 59).  In October of 2018, Plaintiff made a renewed motion to dismiss the charges.  (Dkt. No. 63-1, at 125–57).  In November of 2018, two of the charges against Plaintiff were dismissed based on his motion.  (Dkt. No. 55-1, ¶ 25).  The remaining charges were withdrawn by the District Attorney's Office in January of 2019 and dismissed in the interest of justice.  (*Id.*, ¶ 26).

## IV.     STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d

Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true

nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*,

804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir.

1985)).  Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create

a genuine issue of material fact where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d

159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## V.   DISCUSSION

### A.  Request for Discovery

As an initial matter, Plaintiff has submitted with his opposition to Defendants' summary

judgment motion a cross-motion requesting discovery pursuant to Rule 56(d) of the Federal

Rules of Civil Procedure.  (Dkt. No. 63-4, at 31–33).  Rule 56(d) states that "[i]f a nonmovant

shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to

justify its opposition, the court may . . .  (1) defer considering the motion or deny it; (2) allow

time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

order."  Fed. R. Civ. P. 56(d).

A party resisting summary judgment on the basis that it needs discovery must submit an

affidavit showing: "(1) what facts are sought [to resist the motion] and how they are to be

obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact,

(3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in

those efforts."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (internal

quotations and citation omitted).  Relatedly, a discovery schedule set by the court can only be

modified for good cause, which "depends on the diligence of the moving party." *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000).

Here, Plaintiff has submitted an affidavit which states that: 1) in October 2021 counsel requested from Chenango County Court the records of Plaintiff's 2018 criminal matters; 2) Plaintiff never received such records; 3) in January 2022 counsel requested from Defendants information related to Plaintiff's calls to the Register; 4) counsel never received the recordings of the calls; and 5) unspecified documents requested at witness depositions were never produced. (Dkt. No. 63-1, at 1–4).

Plaintiff claims that "[w]ithout additional time to obtain the information about plaintiff's SCR calls . . . and the items promised but never produced, full opposition to the pending motion will not be possible." (*Id.*, at 4). Specifically, Plaintiff suggests that the missing evidence is necessary for reasons including:

> Having those materials [will] show there are factual disputes regarding false arrest, malicious prosecution, violation of due process, and municipal liability, in that such documents and/or materials will demonstrate plaintiff did have a reasonable basis for his beliefs regarding what happened to his daughter, that therefore no probable cause existed to arrest and prosecute him – especially upon the charges filed in August 2018, that both Defendant's law enforcement arms had ample reason to know those things.

> Having such materials will also demonstrate both Defendants' final policy makers knew or should have known the agencies over whom they preside failed in their management responsibilities, and further show such failure was either deliberate or the result of gross negligence or plain incompetence, especially the District Attorney in the pre-investigative phase of plaintiff's criminal matter, and in his duties in managing the District Attorney's Office.

(*Id.*). Plaintiff's counsel also suggests that he should be allowed to re-depose witnesses when the materials are produced and depose a Rule 30(b)(6) witness regarding "plaintiff and his child's case/matter" and the release of Plaintiff's phone calls to the Register. (*Id.*, at 5).

9

First, the Court finds that Plaintiff has shown only a speculative connection between the allegedly missing evidence and the municipal liability claim at issue in this case. Plaintiff argues that such evidence will demonstrate factual disputes but he does not meaningfully explain *how*. His conclusory assertions are simply not enough to warrant additional discovery. Plaintiff's request may be denied for this reason alone. *See L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 117 (2d Cir. 2020) (finding that request for discovery was "too speculative to justify further discovery").

But even assuming such evidence could be reasonably expected to create a genuine issue of material fact to defeat summary judgment, the Court finds that Plaintiff has not shown that he was diligent in seeking the evidence such that there is good cause for re-opening discovery. Fact discovery was first set to conclude in this case on March 21, 2022. (Dkt. No. 29). On February 7, 2022, Plaintiff filed a status report stating that he had made discovery demands to Defendants. (Dkt. No. 35). The parties then requested and were granted an extension of discovery until May 2, 2022. (Dkt. Nos. 38–39). On April 29, 2022, Plaintiff requested a conference due to Defendants' alleged "non-response to paper discovery demands, and apparent refusal to be deposed." (Dkt. No. 40). On May 4, 2022, United States Magistrate Judge Miroslav Lovric held a conference with the parties and ordered that: 1) Defendants shall respond to Plaintiff's outstanding discovery demands; and 2) all discovery shall be completed by July 25, 2022. (Dkt. No. 42).

On July 5, 2022, the parties informed the Court that they had "exchanged responses to written discovery demands," but were "still in the process of meeting and conferring regarding the sufficiency of the same." (Dkt. No. 45). The parties then requested and were granted an extension of discovery until August 25, 2022. (Dkt. Nos. 47–48). On August 24, 2022,

Plaintiff requested a conference due to an issue with a deposition.  (Dkt. No. 40).  Magistrate

Judge Lovric held a conference the next day, and on August 26, 2022, the parties submitted a

joint status report stating that: 1) the deposition had been scheduled; and 2) "[t]here are no

further outstanding discovery issues now that this deposition has been scheduled."  (Dkt. No.

53).  On August 29, 2022, Magistrate Judge Lovric ordered that the discovery deadline would

be extended until August 31, 2022 to allow for the deposition, and except for that matter,

"discovery is completed."  (Dkt. No. 54).

      Based on the forgoing, there is no indication that Plaintiff ever made a diligent effort to

obtain the evidence now sought.  He did not file a letter, raise the issue at a conference, or make

a motion to compel.  When discovery closed and Plaintiff had not received this allegedly

important evidence, he offered no protest.  Plaintiff's only explanation is that counsel tried to

request the evidence in October 2021 and January 2022.  (Dkt. No. 63-1, at 1–2).  But Plaintiff

points to no follow-up efforts whatsoever.  And Plaintiff can hardly claim to be surprised by

Defendants' arguments as to municipal liability, which were raised in their motions to dismiss.

(Dkt. No. 9-1, at 10–16; Dkt No. 14-1, at 11–17).  Under these circumstances, the Court finds

that Plaintiff has not demonstrated due diligence in obtaining the evidence now sought nor good

cause for re-opening discovery at this late juncture.  Accordingly, Plaintiff's request for

additional discovery pursuant to Rule 56(d) is denied.

    **B.  Summary Judgment**

      Plaintiff has four remaining Section 1983 claims in this case: 1) false arrest; 2) malicious

prosecution; 3) denial of due process; and 4) municipal liability.  (Dkt. Nos. 12, 24).  As to the

first three claims, Plaintiff has failed to name as defendants the individuals who allegedly

violated his rights.  Plaintiff only named Defendants Chenango County and the City of Norwich,

who cannot be held vicariously liable for constitutional torts committed by their employees.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978).  Therefore, Plaintiff's first three claims are subject to dismissal and his entire case comes down to his municipal liability claim.[3]

In order to sustain a Section 1983 claim for municipal liability, a plaintiff must show that he suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom.  *Monell*, 436 U.S. at 694–95.  A municipal policy or custom may be established by any of the following: 1) a formal policy, officially promulgated by the municipality, *id.* at 690; 2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); 3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985) (plurality opinion); or 4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Thus, to survive summary judgment, Plaintiff must show that he suffered a constitutional violation—in this case false arrest, malicious prosecution, or denial of due process—and that the violation resulted from an identified municipal policy or custom.  Defendants argue that Plaintiff's claim is subject to summary judgment because "the material facts show no policy, custom, or practice which could have resulted in the alleged constitutional violations, nor do they show any constitutional violations."  (Dkt. No. 55-2, at 6).

---

[3] *See Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (recognizing that, for a Section 1983 claim against an individual defendant, "the plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

12

In response, Plaintiff argues that there are factual questions as to municipal liability. (Dkt. No. 63-4, at 24–27).  Plaintiff asserts that his alleged constitutional injuries resulted from action taken by a policymaker in Defendants' employ or a failure to train/supervise by Defendants.  (*Id.*).  But Plaintiff offers only speculation to support these theories.  For example, Plaintiff hypothesizes that PO Roberts arrested Plaintiff in February 2018 at "the directive of someone with final policy making authority."  (*Id.*, at 24).  Plaintiff provides no evidence as to who that person might be or what they communicated to PO Roberts.  According to PO Roberts, whose testimony is unrebutted, the case began when he received a complaint from Mary Skillin about Plaintiff's calls to the Register.  (Dkt. No. 55-7, at 15–20).  To the extent Plaintiff claims the Chief of Police and/or District Attorney must have been involved in his case, he has not identified any specific actions they took or decisions they made.[4]  Indeed, Plaintiff appears to suggest that his arrest and prosecution were set in motion by the father of Mary Skillin, who was a retired judge, not a policymaker employed by Defendants.  (Dkt. No. 55-8, at 125–26).

As to Plaintiff's second theory of liability, he claims that there is a question of fact as to whether the ADA handling his case, Ms. Parker, "was inadequately trained and/or supervised." (Dkt. No. 63-4, at 26).  But Plaintiff cites no evidence as to who trained/supervised ADA Parker, what the training/supervision consisted of, or how any deficiency caused his prosecution. Similarly, while Plaintiff has offered evidence that might suggest PO Roberts had a weak basis to arrest, he has not drawn a link to police training or supervision.  Absent such evidence, Plaintiff cannot establish a failure to train or supervise that amounts to deliberate indifference. *See Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006) ("Because [the plaintiff] failed to

---

[4] To the extent Plaintiff suggests that the District Attorney failed to turn over to the Police Department exculpatory statements Plaintiff submitted in April 2018 (which tend to support his claim for false arrest in September 2018), he has adduced no evidence that the failure was attributable to a policymaker or part of a policy, as opposed to mere negligence or a mistake.

allege facts establishing that any constitutional deprivations he suffered were a consequence of the City's failure to adequately train or supervise its officers, summary judgment dismissing his section 1983 claim of false arrest against the City was proper.").

In sum, even assuming that Plaintiff raised a question of fact as to the alleged false arrest, malicious prosecution, or denial of due process, he has failed to do so for municipal liability. Plaintiff has presented no evidence that would permit a reasonable jury to conclude that any constitutional violations resulted from action taken by a policymaker or from a failure to train/supervise by Defendants. Therefore, Defendants are entitled to summary judgment on Plaintiff's municipal liability claim. *See Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir. 1987) (finding that municipal liability claim failed as a matter of law where the appellees "failed to present relevant proof of a municipal policy or custom beyond their own arrests").

### C.  Motion to Amend

Finally, the Court turns to Plaintiff cross-motion seeking to amend. Rule 15(a)(2) of the Federal Rules of Civil Procedure states that courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this liberal standard, leave to amend should be freely granted unless there is a "substantial reason" for denial such as futility, excessive delay, or undue prejudice to the opposing party. *See Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000). However, "[t]he period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted." *Sacerdote v. New York U.*, 9 F.4th 95, 115 (2d Cir. 2021). "It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only upon a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Id.* (citing Fed.

R. Civ. P. 16(b)(4)).  "Good cause" depends on the diligence of the moving party.  *See Parker*, 204 F.3d at 340.

Plaintiff commenced this action on April 5, 2020 and filed an Amended Complaint on August 31, 2020.  (Dkt. Nos. 1, 12).  On October 20, 2020, Plaintiff filed a motion to amend, which Defendants opposed.  (Dkt. Nos. 16–17).  On August 25, 2021, the Court denied Plaintiff's motion, explaining that "Plaintiff did not comply with Local Rule 15.1 and the proposed amendments fail to cure the relevant deficiencies identified by Defendants."  (Dkt. No. 24).  The Court stated that it "will only grant Plaintiff leave to file a new amended pleading if it is focused strictly on the above claims [false arrest, malicious prosecution, violation of due process, and municipal liability] and specifically alleges the personal involvement of any new defendants in their individual capacities."  (*Id.*).  On September 28, 2021, the Court issued a Uniform Pretrial Scheduling Order, which set a deadline of December 21, 2021 for amendment of pleadings.  (Dkt. No. 29).  Plaintiff never followed up and sought to amend again.

Now Plaintiff finally seeks to amend, more than a year after the deadline has expired and only in response to summary judgment.  (Dkt. No. 63-1, at 227–41).  Among other things, the proposed Second Amended Complaint would add PO Roberts and ADA Parker as defendants, as well as John/Jane Doe defendants from the Chenango County Department of Social Services. (*Id.*).  Defendants oppose Plaintiff's motion "on grounds that it would be futile, prejudicial, and there is no reason Plaintiff could not have included the proposed individual Defendants in question at the time of his first amendment as of right."  (Dkt. No. 68, at 10).

First, the Court finds that Plaintiff has not demonstrated good cause for his failure to comply with the Court's deadline regarding amended pleadings.  Plaintiff offers no excuse

whatsoever for his excessive delay, much less evidence of diligence.  And this is not a case where Plaintiff has been "sandbagged" by Defendants' arguments late in the game.  Far from it. As early as August 17, 2020, Defendants sought dismissal of Plaintiff's municipal liability claim on the grounds that they could not be held vicariously liable for the actions of unnamed individual defendants.  (Dkt. No. 9-1, at 10–11).  Defendants made the same argument in their renewed motion to dismiss on September 22, 2020.  (Dkt. No. 14-1, at 10–11).  And the Court's August 25, 2021 Order specifically put Plaintiff on notice that the operative pleading was deficient as to any claims against individual defendants.  (Dkt. No. 24).

The Court also finds that allowing Plaintiff's amendments would cause Defendants substantial prejudice.  Plaintiff's proposed changes would almost certainly require additional discovery to delineate the roles of the new defendants in the alleged constitutional violations. Moreover, Defendants have already filed a thorough motion for summary judgment.  Indeed, courts have held that "leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier." *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) (citing *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) and other cases).  As discussed above, Plaintiff had ample notice and opportunity to amend his pleading earlier.

Accordingly, given Plaintiff's excessive delay in seeking amendment, the complete absence of a showing of good cause, the prejudice to Defendants, and the juncture of the case, Plaintiff's motion must be denied.  *See Parker*, 204 F.3d at 340 (holding that "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause"); *Bader v. Spec.*

16

*Metals Corp.*, 985 F. Supp. 2d 291, 304 (N.D.N.Y. 2013) (denying motion to amend where the plaintiff failed to move to amend in a timely fashion and failed to show good cause for delay).

## VI.    CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 55) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion seeking additional discovery and to amend (Dkt. No. 63) is **DENIED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 12) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

February 22, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

17